# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

NORTHERN DISTRICT OF TEXAS

OCT 1 6 2002

CLERK, U.S. DISTRICT COURT

By _____
               Deputy

| | |
|---|---|
| SABRE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 3: 02CV2016-L |
| | ) |
| AIR CANADA, INC., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS, OR, IN THE ALTERNATIVE, TO STAY ON GROUNDS OF INTERNATIONAL ABSTENTION AND SUPPORTING BRIEF

Stephen D. Susman
State Bar No. 19521000
Harry P. Susman
State Bar No. 24008875
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax:  (713) 654-6666

ATTORNEYS FOR DEFENDANT
AIR CANADA, INC.

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Page

Introduction ............................................................... 1

Statement of Facts .......................................................... 3

    A.     The Parties and the Agreement ...................................... 3

    B.     Sabre Threatens the Introduction of Tango ............................ 4

    C.     The Proceedings in Canada ......................................... 6

Argument ................................................................. 7

I.    This Case Should be Dismissed for Forum non Conveniens ...................... 7

    A.     Sabre's choice-of-forum should receive no presumptive weight ............ 8

    B.     Forum Non Conveniens Step 1: Canada is an Adequate and Available
         Forum .................................................... 9

    C.     Forum Non Conveniens Step 2: The Private Interest Factors Warrant
         Dismissal ................................................. 11

         1.    Ease of Access to Sources of Proof ............................ 11

         2.    Access to Witnesses ......................................... 13

         3.    Practical Problems .......................................... 13

    D.     Forum Non Conveniens Step 3: The Public Interest Factors Point to Canada
         As Well ................................................... 14

         1.    Court Congestion ........................................... 15

         2.    Adjudication of "Localized" Controversy ...................... 15

         3.    Governing law .............................................. 18

         4.    Avoiding Unnecessary Problems in Conflicts of Laws or
             Application of Foreign Law ................................... 19

Page

II.     In The Alternative, This Court Should Stay This Action Pending Resolution of
        the Canadian Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        A.     International Abstention Warrants a Stay Here . . . . . . . . . . . . . . . . . . . . . . . 20

        B.     All Roads Lead to Canada . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## EXHIBITS

| | |
|---|---|
| Exhibit A | Sabre Participating Carrier Distribution and Services Agreement (July 31, 1990) (the "PCA") |
| Exhibit B | Sabre Participating Carrier Distribution Services Agreement (February 1, 1996) (the "Amendment") |
| Exhibit C | Total Access Direct Connect Air Optional Services Addendum (April 20, 1998) (the "Addendum") |
| Exhibit D | Canadian Computer Reservation System Regulations (SOR/95-275) ("CRS Regulations") |
| Exhibit E | Motion for Declaratory Judgement in the Superior Court of Québec, District of Montreal, under Article 453 of the Code of Civil Procedure of the Province of Québec (the "Art. 453 Motion") |
| Exhibit F | Affidavit of Pierre Y. Lefebvre ("Lefebvre Affidavit") |
| Exhibit G | *Montana v. Les Développements du Saguenay Ltée*, [1977] 1 S.C.R. 32 (Can.) |
| Exhibit H | Judicial Caseload Profile for the Northern District of Texas |

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147
(5th Cir. 1987), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Banco Metropolitano, S.A. v. Desarrollo de Autopistas y Carreteras de Guatemala, S.A.*,
616 F. Supp. 301 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824 (5th Cir. 1993) . . . . . . . . . . . . . . . . 13, 14

*Blanco v. Banco Indus. De Venezuela, S.A.*, 997 F.2d 974 (2d Cir. 1992) . . . . . . . . . . . . . . 16

*Boushel v. Toro Co.*, 985 F.2d 406 (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Brinco Min. Ltd. v. Federal Ins. Co.*, 552 F. Supp. 1233 (D.D.C. 1982) . . . . . . . . . . . . . . . 23

*Buzas Baseball, Inc. v. Board of Regents of Univ. System of Ga.*, 189 F.3d 477,
1999 WL 682883 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Caldas & Sons Inc. v. Willingham*, 17 F.3d 123 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 16

*Coakes v. Arabian American Oil Co.*, 831 F.2d 572 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . 8

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) . . . . . . . . . . 20

*In re Complaint of Geophysical Service, Inc.*, 590 F. Supp. 1346 (S.D. Tex. 1984) . . . . . . . . 10

*In re Corel Corp., Secs. Litig.*, 147 F. Supp. 2d 363 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . 10

*DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 10

*Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331 (5th Cir. 1999) . . . . . . . . . . . . . . 11, 16

*EFCO Corp. v. Aluma Systems, USA, Inc.*, 983 F. Supp. 816 (S.D. Iowa 1997) . . . . . . . . 22, 23

*FII Leveraged U.S. Gov't Bond Fund v. TCW Funds Mgmt.*, Nos. 97-56414, 97-56468,
1998 U.S. App. Lexis 17586 (9th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Finova Capital Corp. v. Ryan Helicopters U.S.A, Inc.*, 180 F.3d 896 (7th Cir. 1999) . . . . . . . 20

*Fleeger v. Clarkson Co., Ltd.*, 86 F.R.D. 388 (N.D. Tex. 1980) . . . . . . . . . . . . . . . . . . . . . . 23

*Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248 (D. Mass. 1999) . . . . . . . . . . . . . 20

Page

*Gonzales v. P.T. Pelangi Niagra Mitra Int'l*, 196 F. Supp. 2d 482 (S.D. Tex. 2002) . . . . . 10, 14

*Gonzalez v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . 11, 16

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . 16

*Lebofsky v. Helen's Handibags Franchise Corp.*, No. 90-7523,
    1991 U.S. Dist. LEXIS 6112 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ledingham v. Parke-Davis Div. of Warner-Lambert Co.*, 628 F. Supp. 1447
    (E.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Magellan Real Estate Inv. Trust v. Losch*, 109 F. Supp. 2d 1144 (D. Ariz. 2000) . . . . . . . . . 17

*McNeil v. Stanley Works*, No. 00-16557, 2002 WL 535790 (9th Cir. 2002) . . . . . . . . . . . . . . 17

*Ministry of Health, Province of Ontario, Can. v. Shiley Inc.*, 858 F. Supp. 1426
    (C.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*National Union Fire Ins. Co. v. Frasch*, 751 F. Supp. 1075 (S.D.N.Y. 1990) . . . . . . . . . . . . 17

*Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829 (S.D. Tex. 1993) . . . . . . . . . . . . . . 18

*Norcold, Inc. v. Greg Lund Prods.*, 109 F. Supp. 2d 819 (S.D. Ohio 2000) . . . . . . . . . . . . . . 10

*Oil Basins Limited v. Broken Hill Proprietary Company Limited*, 613 F. Supp. 483
    (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Orix Credit Alliance, Inc. v. Mid-South Materials Corp.*, 816 F. Supp. 230
    (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801 (5th Cir.),
    *cert. denied*, 474 U.S. 909 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pan Am World Airways,Inc. v. Lopez*, 490 U.S. 1032 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Penwest Dev. Corp. v. Dow Chemical Co.*, 667 F. Supp. 436 (E.D. Mich. 1987) . . . . . . . . . . 10

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1982) . . . . . . . . . . . . . . . . . . 8, 9, 10, 11, 16, 18, 19

*Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 20, 21

Page

*Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.*, 760 F.2d 390
    (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Rezulin Prods. Liab. Litig.*, 214 F. Supp. 2d 396 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . 10

*Roynat, Inc. v. Richmond Transp. Corp.*, 772 F. Supp. 417 (S.D. Ind. 1991) . . . . . . . . . . . . . 10

*Societe Nat'l Indus. Aerospatiale v. U.S. Dist. Ct. for the So. Dist. of Iowa*,
    482 U.S. 522 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*State Street Bank and Trust Co. v. Inversiones Errazuriz, Limitada*,
    No. 01 Civ. 3201(RLC), 2002 U.S. Dist. Lexis 1731 (S.D.N.Y.) . . . . . . . . . . . . . . . . . 17

*Tjontveit v. Den Norske Bank ASA*, 997 F. Supp. 799 (S.D. Tex. 1998) . . . . . . . . . . . . . . . . 7, 9

*Torres v. Southern Peru Copper Corp.*, 113 F.3d 540 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . 21

*Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512 (11th Cir. 1994) . . . . . . . 21, 22

*Van Cauwenberghe v. Baird*, 486 U.S. 517 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Walker v. South Central Bell Telephone Co.*, 904 F.2d 275 (5th Cir. 1990) . . . . . . . . . . . . . . 8

**STATE CASES**

*Mabon Limited v. Afri-Carib Enterprises, Inc.*, 29 S.W.3d 291, 297 (Tex. App. -
    Houston [14th Dist.] 2000, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**FEDERAL STATUTES**

28 U.S.C. § 1781 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FOREIGN CASE**

*Montana v. Les Développements du Saguenay Ltée*, [1977] 1 S.C.R. 32 (Can.) . . . . . . . . . 11, 18

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SABRE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3: 02CV2016-L |
| | ) | |
| AIR CANADA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS, OR,
IN THE ALTERNATIVE, TO STAY ON GROUNDS OF
<u>INTERNATIONAL ABSTENTION AND SUPPORTING BRIEF</u>**

Defendant, Air Canada moves for dismissal under the doctrine of forum non conveniens. In the alternative, Air Canada moves this Court to stay this action under the doctrine of international abstention pending resolution of parallel proceedings filed in the Superior Court of Québec in the District of Montreal.

## <u>INTRODUCTION</u>

This is a Canadian dispute. Air Canada is Canada's largest airline. Sabre, Inc. ("Sabre") operates a computer reservation system ("CRS") that allows travel agents to book flights on various airlines. Sabre, the dominant CRS provider worldwide, has a substantial presence in Canada. The present dispute was provoked by Air Canada's creation of a low-cost service, called Tango, that operates almost exclusively within Canada. For many months, Air Canada and Sabre have disagreed over whether Sabre has the right to book Tango flights; such bookings would involve almost exclusively Canadian customers and Canadian travel agents.

504893v1/229031

When it became clear that Air Canada and Sabre could not agree about Tango flights, Air Canada initiated proceedings against Sabre in the Superior Court of Québec in the District of Montreal. Air Canada was particularly concerned about complying with Canadian regulations governing CRSs. Specifically, these regulations, which are expressly incorporated into the contract between Air Canada and Sabre, address a carrier's obligation to provide inventory to CRSs. As well, Sabre threatened to remove all Air Canada flights (not just Tango) from its system. Given Air Canada's significant role in Canadian air travel and Sabre's substantial market power, Sabre was threatening to disrupt the entire Canadian air travel market.

Air Canada filed a declaratory judgment action under an expedited procedural device in Québec and immediately served Sabre's Canadian office. Air Canada also faxed Sabre a courtesy copy of its pleading. Upon receiving Air Canada's Québec action, however, Sabre unsheathed a secret lawsuit that it had filed in this Court but not served.

While this Court has jurisdiction over this dispute and venue is proper, this Court should nevertheless dismiss Sabre's action in favor of proceedings in Canada. Canada offers more than an available and adequate forum. The Superior Court of Québec offers the most convenient forum to resolve this dispute. Specifically, Sabre claims that Air Canada is obligated to make "available" to Sabre's subscribers the exact same information that is available to Air Canada's internal reservation personnel. As with most contractual disputes, the parties not only disagree about the meaning of the contractual language but also disagree about how the "facts" impact the contractual language. All of the relevant facts in this action will be found in Canada:

- Air Canada's internal reservation personnel are located almost exclusively in Canada;

- Tango's internal reservation personnel are located in Canada;

- Air Canada's internal CRS is located in Canada; and

- The vast majority of the Sabre subscribers whom Sabre claims have been denied access to Tango are Canadian travel agents attempting to book Tango flights—almost exclusively intra-Canadian—for Canadian customers.

Finally, Canada has a significant public interest in this dispute. As a result, this Court should dismiss Sabre's action.

In the alternative, this Court may stay Sabre's lawsuit pending resolution of the Canadian action under the doctrine of international abstention. This controversy implicates important questions of Canadian regulatory law. As noted, Air Canada's obligations under its contract with Sabre depend largely on Air Canada's duties under Canadian regulations for CRSs. Moreover, Air Canada has employed an expedited procedure in Québec that should provide a prompt answer. Once a Canadian court has determined the scope of the Canadian regulations, then this Court will be better able to resolve the contractual dispute between Air Canada and Sabre.

## STATEMENT OF FACTS

### A.   THE PARTIES AND THE AGREEMENT

Air Canada is Canada's largest transnational passenger airline. Sabre operates a global distribution system ("GDS"), a computerized reservation system that displays and distributes information on air and ground transportation, lodging and other travel-related products and services. [1] Sabre's GDS allows paying subscribers, typically travel agents, to obtain information about these products and services and to issue tickets for using these products and services. Sabre has a substantial market share and exercises market power in the GDS market.

---

[1] The terms GDS and CRS are interchangeable.

On or about July 31, 1990, Air Canada and American Airlines, Inc., ("AA") entered into a Sabre Participating Carrier Distribution and Services Agreement ("PCA"), which continues to remain in effect today. (Exhibit A.) Over the years, the PCA was amended.[2] Effective February 1, 1996, the parties executed a Sabre Participating Carrier Distribution Services Agreement (the "Amendment"), and on April 20, 1998, the parties further entered into a Total Access Direct Connect Air Optional Services Addendum (the "Addendum"). (The Amendment and Addendum are Exhibits B and C, respectively.)   The PCA, the Amendment, and the Addendum embody the relevant components of the contract between the parties and are collectively referred to as the "Agreement."

The Agreement is governed by both Texas contract law and Canadian regulatory law.  The PCA contains a choice-of-law provision selecting Texas law.  PCA, Schedule 1 ¶ 2.10.  The Agreement specifically incorporates by reference the Canadian Computer Reservation System Regulations (SOR/95-275) ("CRS Regulations") adopted pursuant to Canada's *Aeronautics Act*, R.S.C., ch. A-2 (1970) (Can.).  *See* PCA ¶ 1.2.  Additionally, as a foreign corporation not domiciled in Texas, Air Canada "consents to the *non-exclusive* jurisdiction of the courts of the State of Texas in any dispute arising out of this Agreement."  PCA, Schedule 1 ¶ 2.10 (emphasis added).

**B.     SABRE THREATENS THE INTRODUCTION OF TANGO**

After extensive market research, Air Canada responded to analysis showing Canadian consumers wanted less expensive, "no-frills," discount airline products.  This need was exacerbated for Air Canada and other North American airlines as a result of the September 11th tragedy.[3]  On

---

[2] In 1996, AA spun-off its GDS technology, distribution, and marketing division into Sabre, which assumed all rights and obligations of AA under existing contracts.

[3] *See also* Edward Wong, *The Strains Are Showing in Air Travel*, N.Y. TIMES, Sept. 12, 2002, at C1 (discussing the impact of the 9/11 attacks on the airline industry and noting that only low-cost carriers are

November 1, 2001, Air Canada launched Tango, a low-cost substitute service with reduced advertising, promotional expense, and transaction costs. Tango flights operated almost exclusively between Canadian destinations. So-called "booking" fees charged by GDS operators, like Sabre, have become an increasingly large operating expense for airlines. Tango flights can be booked only on the Air Canada website or through a designated Tango call center. Tango flights are not available on any GDS operator's service.

Between November 1, 2001 and June, 2002, Air Canada operated Tango consistent with its business plan and without any objection from Sabre or any other GDS operator. However, on or about June 26, 2002, Sabre verbally advised Air Canada that it was in breach of the Agreement by not offering its seat inventory on Tango flights for sale through the Sabre GDS. During the ensuing weeks, the parties discussed Sabre's contention. On or about August 29, 2002, Sabre threatened to terminate the Agreement for *all* Air Canada flights unless Air Canada provided its Tango flight inventory to Sabre subscribers.

As a result of the discussions with Sabre, Air Canada became concerned about complying with Canadian regulations for GDS operators—in particular, Canadian CRS Regulation SOR/95-275, which states:

> An obligated carrier shall provide to all systems that are operated in Canada, on the same basis and at the same time as such information is provided to any system, complete, up-to-date and accurate information concerning its schedules, fares, rules and availability in all classes of services.

CRS Regulations § 6; *see also id.* at §§ 7-8 (Exhibit D). Additionally, Air Canada was understandably alarmed by Sabre's threat to cut all Air Canada flights out of Sabre.

---

profitable).

## C.   THE PROCEEDINGS IN CANADA

On September 25, 2002, Air Canada brought a Motion for Declaratory Judgement in the

Superior Court of Québec, District of Montreal, under Article 453 of the Code of Civil Procedure

of the Province of Québec (the "Art. 453 Motion") (Exhibit E).  In the Art. 453 Motion, Air Canada

sought the following relief:

> • A declaration that Air Canada is not obligated to offer reservations for its seat inventory on *all* of its flights, including Tango flights, to Sabre unless it is offered to every other GDS;

> • A declaration that Air Canada is not in violation of the Canadian CRS Regulations (SOR/95-275) by not offering reservation services for its seat inventory on all flights, including Tango flights, to Sabre's GDS subscribers when such services are not offered to other GDSs;

> • A declaration that Air Canada's decision not to offer reservation services for its seat inventory on the Tango flights to any GDS operator is not a default under the Agreement and that Sabre is not entitled to terminate the Agreement on this basis; and

> • A declaration that Air Canada does not owe Sabre any money resulting from its decision not to offer reservation services for its seat inventory on Tango flights to any GDS operator.

(Art. 453 Motion at 3).  Air Canada has filed its Québec action pursuant to a unique expedited

procedural device, Article 453, under which parties to a controversy may get a judicial declaration

of their rights and responsibilities under a contract or statute as quickly as possible. *See* Lefebvre

Affidavit ¶ 6 (Exhibit F).

On September 26, Air Canada faxed a courtesy copy of the Art. 453 Motion to Sabre's Texas

office and served Sabre in Ontario pursuant to Canadian rules on the same day.  On September 17,

2002 (nine days before Air Canada filed and served), Sabre had filed a skeletal complaint in this

Court. Sabre's complaint is hopelessly vague, alleging merely that Air Canada breached the Agreement but without any explanation; in fact, any mention of Tango is conspicuously absent. Sabre, however, did not attempt to serve Air Canada. On September 26—immediately after receiving the courtesy copy of Air Canada's Québec action—Sabre initiated service of its Texas complaint.

Sabre's termination of the Agreement could devastate the Canadian air travel industry. Air Canada furnishes approximately two-thirds of all Canadian air travel. In the one-year period between May 2001 and April 2002, a substantial proportion of Air Canada flight segments booked worldwide were booked using Sabre's GDS. Of the Canadian travel agents who booked Air Canada flights during this period, over half used Sabre's GDS. Conversely, Air Canada flights to or from Texas represent only 1.6% of Air Canada's total scheduled departures. Moreover, nearly all of Air Canada's Tango flights are between destinations within Canada. Virtually all Tango tickets issued to-date have been purchased within Canada.

## **ARGUMENT**

### I.  THIS CASE SHOULD BE DISMISSED FOR FORUM NON CONVENIENS.

This is precisely the type of dispute that should be dismissed for forum non conveniens. Air Canada can satisfy its burden of showing that the "convenience of the parties and the Court and the interests of justice" indicate this action should be tried in Canada. *Tjontveit v. Den Norske Bank ASA*, 997 F. Supp. 799, 803 (S.D. Tex. 1998).

The forum non conveniens inquiry proceeds in three steps. First, this Court must consider whether the Superior Court of Québec is an available and adequate forum. Second, this Court must weigh various private interest factors. Third, if the private interest factors counsel against dismissal,

this Court should nevertheless determine if the public interest factors favor dismissal. *See Gonzalez*

*v. Chrysler Corp.*, 301 F.3d 377, 379-84 (5th Cir. 2002).

If dismissal is proper based on the private interest analysis (step 2), the inquiry stops here and

there is no need to conduct the step 3 analysis. *Id.*; *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540,

1550-51 (5th Cir. 1991).

"The Supreme Court has warned that if central emphasis is placed upon any single factor, the

forum non conveniens doctrine would lose much of the flexibility that makes it so valuable." *Coakes*

*v. Arabian American Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987) (*citing Piper Aircraft Co. v. Reyno*,

454 U.S. 235, 250 (1982)).

### A.     Sabre's choice-of-forum should receive no presumptive weight.

Sabre should not benefit from the normal presumption accorded to a plaintiff's choice of

forum because its pre-emptive lawsuit simply represents an effort to manipulate procedure rules.

A cursory examination of Sabre's four-page complaint shows that it is only a place-holder.  The

complaint contains little more than a description of the parties; the fact that an agreement existed

between them; and a conclusory statement that "Air Canada has not performed its obligations under

and has materially breached the [PCA]." Sabre Complaint ¶ 14.  Even though the Federal Rules only

require a "short and plain statement of the claim showing the pleader is entitled to relief," FED. R.

CIV. P. 8(a)(2), Sabre has not even met this minimal requirement: "A complaint which contains a

bare bones allegation that a wrong occurred and which does not plead any of the facts giving rise to

the injury does not provide adequate notice." *Walker v. South Central Bell Telephone Co.*, 904 F.2d

275, 277 (5th Cir. 1990) (*citing Duncan v. AT&T Comm., Inc.*, 668 F. Supp. 232 (S.D.N.Y. 1987)).

What can be more deficient than failing to allege *what* material breach has been committed,

especially in light of the complex long-term nature of the relationship? Sabre's opaque complaint stands in marked contrast to the detailed pleading filed by Air Canada in Québec. Sabre's failure to explain the basis of its claim suggests a reluctance to reveal that Canada is truly the locus of this dispute.

Sabre is exploiting the Federal Rules at the expense of the convenience of all parties and the interests of justice. *Cf. Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir.) *cert. denied*, 474 U.S. 909 (1985) (affirming dismissal of anticipatory declaratory judgment action filed solely for the purpose of forum-shopping)*; Buzas Baseball, Inc. v. Board of Regents of Univ. System of Ga.*, 189 F.3d 477, No. 98-4098, 1999 WL 682883 at *3 (10th Cir.1999). Sabre's failure to inform Air Canada of the suit or initiate service of process until after being notified of the Art. 453 Motion certainly suggests that Sabre sought to "vex," "harass," and "oppress" Air Canada by inflicting upon it unnecessary expense and trouble. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).

Even if this Court extends the usual presumption to Sabre's choice of forum, dismissal is proper "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Piper Aircraft*, 454 U.S. at 256 n. 23. "In any event, 'American citizens and residents have no indefeasible right of access to the federal courts.'" *Tjontveit*, 997 F. Supp. at 805 (*quoting Pain v. United Tech. Corp.*, 637 F.2d 775, 798 (D.C. Cir. 1980) *cert. denied*, 454 U.S. 1128 (1981)).

**B.      Forum Non Conveniens Step 1: Canada is an Available and Adequate Forum.**

An alternative forum is available if "the entire case and all parties can come within the jurisdiction of that forum." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821

F.2d 1147, 1165 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom.*, *Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989). In this case, because Sabre is amenable to process in Canada through its Ontario office, the Superior Court of Québec is an available forum. *Piper Aircraft*, 454 U.S. at 254 n.22.

An alternative forum is considered "adequate" as long as the "parties will be treated fairly and not be deprived of all remedies there." *Gonzales v. P.T. Pelangi Niagra Mitra Int'l*, 196 F. Supp. 2d 482, 486 (S.D. Tex. 2002). A forum is adequate even if the parties do not enjoy the same benefits they might receive in an American court. *In re Air Crash*, 821 F.2d at 1165. In other words, "the remedy provided by the foreign forum qualifies as inadequate only when it amounts to 'no remedy at all.'" *P.T. Pelangi*, 196 F. Supp. 2d at 486 (*citing Piper Aircraft*, 454 U.S. at 254). The Canadian courts are more than adequate; in this case, they are the *most* competent tribunal to adjudicate this dispute.[4] Federal courts routinely hold that Canada is an adequate forum. *See, e.g.*, *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 57-60 (2d Cir. 2000); *In re Rezulin Prods. Liab. Litig.*, 214 F. Supp. 2d 396, 398 (S.D.N.Y. 2002); *In re Corel Corp., Secs. Litig.*, 147 F. Supp. 2d 363, 365 (E.D. Pa. 2001); *Norcold, Inc. v. Greg Lund Prods.*, 109 F. Supp. 2d 819, 828 (S.D. Ohio 2000); *Ministry of Health, Province of Ontario, Can. v. Shiley Inc.*, 858 F. Supp. 1426, 1441 (C.D. Cal. 1994); *Roynat, Inc. v. Richmond Transp. Corp.*, 772 F. Supp. 417, 419 (S.D. Ind. 1991); *Penwest Dev. Corp. v. Dow Chemical Co.*, 667 F. Supp. 436, 438-39 (E.D. Mich. 1987); *Ledingham v. Parke-Davis Div. of Warner-Lambert Co.*, 628 F. Supp. 1447, 1450 (E.D.N.Y. 1986); *In re Complaint of Geophysical Service, Inc.*, 590 F. Supp. 1346, 1359 (S.D. Tex. 1984). Moreover, to

---

[4] The attached affidavit should foreclose any question that the Canadian courts will provide an institutionally fair forum for adjudicating this dispute. *See* Lefebvre Affidavit. *See P.T. Pelangi*, 196 F. Supp. 2d at 487 (finding that defendants had met their burden of demonstrating the adequacy of Indonesia as an adequate forum by submitting an affidavit of an Indonesian lawyers).

the extent that the Canadian court will apply basic American contract law, it has experience with that as well. *See, e.g., Montana v. Les Développements du Saguenay Ltée*, [1977] 1 S.C.R. 32 (Can.) (decision by Supreme Court of Canada emanating from the Province of Québec, in which the court applies New York law) (Exhibit G); *see also* Lefebvre Affidavit ¶ 5.

### C.   Forum Non Conveniens Step 2: The Private Interest Factors Warrant Dismissal.

The private interest factors weigh heavily in favor of having this controversy adjudicated in Québec. The private interest factors are well-established:

- The relative ease of access to sources of proof;

- The availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;

- The possibility of viewing the premises, where applicable; and

- All other "practical problems" that make trial of a case easy, expeditious and inexpensive.

*Gilbert*, 330 U.S. at 509; *Piper Aircraft*, 454 U.S. at 241 n. 6. No individual factor should be given conclusive weight. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999); *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 878 (5th Cir. 1987).

### 1.   Ease of Access to Sources of Proof

Because this dispute is over whether Air Canada is obligated by the Agreement and Canadian CRS Regulations to submit the Tango flight inventory to Sabre, logically, the proof is overwhelmingly in Canada.

The evidence pertaining to Tango bookings is in various locations in Canada. Air Canada's reservation personnel are located almost exclusively in Canada. Tango's internal reservation

personnel are located in Canada. Air Canada's internal CRS is located in Canada. The vast majority

of the Sabre subscribers whom Sabre claims have been denied access to Tango are Canadian travel

agents attempting to book Tango flights, which are almost exclusively intra-Canadian, for Canadian

customers. Virtually all the operative facts occurred in Canada. And the proof is there, too:

- Documents - The documents material to this case—*i.e.*, those relevant to Tango operations, bookings, reservations systems, flight schedule, availability, and fare data, etc.—are *all* located in Canada.

- Witnesses - The vast majority of the relevant fact witnesses who may have knowledge of the Air Canada-Sabre relationship and of Tango will come from Canada. Some of theses witnesses are: (i) Susan Clements, Director of Agency Sales (Montreal); (ii) Ron LeRadza, General Manager, Product Distribution (Toronto); (iii) George Reeleder, Senior Director of Scheduling (Montreal); (iv) Marc Rosenberg, Vice President of Sales and Products Distribution (Toronto); (v) David Slobod, CRS and Product Distribution Manager (Montreal & Toronto); (vi) Francis E. Yorksie, Former CRS and Product Distribution Manager, now retired; (vii) Gordon Young, Senior Director, Call Center (Montreal).

- Reservations Data - Almost two-thirds of the flights booked by travel agents on Air Canada originate *in* Canada; almost *all* of the Tango flights are purchased in Canada exclusively. Therefore, the proof pertaining to consumers who would have booked Tango flights through Sabre is also located in Canada.

- Expert testimony - To the extent that the parties may use experts to testify about the relevant market effects on the Canadian air transportation industry, they will come from Canada, not Texas.

Only a handful of witnesses—those involved with negotiations and discussions over the Agreement from Sabre—will come from Texas. Other than Agreement-related documents, none of the Tango-related documents is in Texas. As a result, the cost and inconvenience of obtaining the material proof for this case will be substantially increased if the case proceeds in Texas, rather than in Canada.

### 2.    Access to Witnesses

Canada has a sophisticated and modern civil procedure system that adequately provides for the compulsory attendance of unwilling witnesses. Canadian courts can exercise subpoena power to require unwilling witnesses to appear for depositions and for trial. *See* Lefebvre Affidavit ¶ 8. For any unwilling witnesses in the United States, Canadian courts can issue letters rogatory which would be enforced by United States courts. 28 U.S.C. § 1781 (2002).

Because the majority of the witnesses are likely to come from various destinations in Canada (mostly in Montreal and Toronto), the cost of attendance for willing witnesses will be substantially lower if this case proceeds in Québec. Flights between destinations within Canada are more frequent and available than flights between Dallas and Canadian cities. Therefore, considerations of time, convenience, and expense for witnesses support dismissal.

### 3.    Practical Problems

This case may involve foreign language evidence, because some of Air Canada's documentation may be in French and some Canadian travel agents may testify in French. Thus, it will be much easier to adjudicate this dispute in the Superior Court of Québec, which is better equipped to handle such dual-language evidence. *See Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 836 (5th Cir. 1993) ("[L]anguage problems that would arise if the case were tried in the

United States, including the need to translate into English all documents and investigation reports created in Germany").

Based on the availability and adequacy of the Canadian forum and evaluation of the private interest factors, this Court should have little doubt that the requiring Air Canada to litigate this matter in Texas would be unduly burdensome compared to slight convenience of allowing Sabre to sue in its own back yard.[5]

### D.    Forum Non Conveniens Step 3: The Public Interest Factors Point to Canada As Well.

Because Canada is an available adequate forum and the private interests of the parties favor litigation there, this Court does not need to reach the third step of the analysis to assess the public interest factors. *Baris*, 932 F.2d at 1550-51 ("[O]nly if the court cannot determine whether such private factors weigh in favor of dismissal is it required to examine the public interest factors at all."); *Baumgart*, 981 F.2d at 837; *P.T. Pelangi*, 196 F. Supp. 2d at 485-86. The public interest factors function as a tie-breaking device when the private interest factors are inconclusive. Nevertheless, even the public interest factors support dismissal. They are:

- Administrative difficulties flowing from court congestion;

- The "local interest in having localized controversies decided at home";

- The interest "in having the trial of a diversity case in a forum that is at home with the state law that must govern" the action;

- The avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and

---

[5] Because no "premises" is involved in this dispute, that private interest factor is irrelevant.

- The unfairness of burdening citizens in an unrelated forum with jury duty.

## 1.    Court Congestion

The court congestion factor clearly supports dismissal. The median period from filing to trial for civil cases in the Northern District of Texas is almost two years. *See* Judicial Caseload Profile for the Northern District of Texas, available at <www.uscourts.gov/cgi-bin/cmsd2001.pl> (noting that the median time from filing to trial for the twelve-month period ending September 30, 2001 in the Northern District of Texas was 23.3 months) (Exhibit H). By contrast, Air Canada has learned that the Art. 453 Motion—due to its expedited nature—may be brought for a hearing in Québec in as little as five months. *See* Lefebvre Affidavit ¶ 7.

## 2.    Adjudication of "Localized" Controversy

In applying the localized controversy factor, this Court should look to the "locus of the alleged culpable conduct." *See Van Cauwenberghe v. Baird*, 486 U.S. 517, 528 (1988). In this case, the locus of the alleged misconduct is Canada. The flights that Air Canada has allegedly denied Sabre involve intra-Canadian routes that are booked almost exclusively by travel agents *within* Canada. While Texas has some interest in this dispute because Sabre is domiciled in Texas, Canada has a considerably greater stake. If Air Canada is coerced into providing its Tango inventory to Sabre, it could undermine the viability of Tango as a low-cost alternative to full service air transportation within Canada.[6] Nearly all Tango flights are between Canadian destinations; U.S. flights comprise less than ten percent of all Tango flights. Less than two percent of all Air Canada global flights come to Texas; no Tango flights come to Texas. Therefore, it can hardly be denied

---

[6] Under the terms of the Agreement and under the Canadian CRS Regulations, Air Canada must provide any product it lists with one GDS operator to *all* other GDS operators. *See* PCA ¶ 2.1; CRS Regulations §§ 6-8.

that the Canadian courts have a far greater local interest adjudicating in this controversy than the Texas courts.

The PCA contains a consent-to-jurisdiction clause—not a mandatory forum selection clause—and such clauses have no impact on the forum non conveniens analysis. By its plain language, the PCA recognizes that the parties consented to the *non-exclusive* jurisdiction of the Texas courts.[7] Under settled Fifth Circuit and Texas law, litigation involving contracts with such clauses may—and frequently does—proceed in another appropriate forum. *Caldas & Sons Inc. v. Willingham*, 17 F.3d 123, 126, 127 (5th Cir. 1994); *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 956 (5th Cir. 1974); *Mabon Limited v. Afri-Carib Enterprises, Inc.*, 29 S.W.3d 291, 297 (Tex. App. – Houston [14th Dist.] 2000, pet. denied).

To treat Air Canada's consent to jurisdiction with any special consideration here would read the words "non-exclusive" right out of the PCA. It would also undermine the mandate of the Supreme Court and Fifth Circuit that no individual factor should be given conclusive weight. *Piper Aircraft*, 454 U.S. at 250; *Dickson Marine*, 179 F.3d at 342; *Naviera Neptuno*, 832 F.2d at 878. In *Blanco v. Banco Indus. De Venezuela, S.A.*, 997 F.2d 974 (2d Cir. 1992), the Second Circuit refused to hold that such clauses merit any special attention:

---

[7] The actual language of the clause reads:

> Each party hereby consents to the *non-exclusive jurisdiction* of the courts of the state of Texas in any dispute arising out of this Agreement and agrees that service of process will be sufficient if made on the Secretary of State of the State of Texas with a copy sent registered mail to Participating Carrier at the address set forth above or such other address as Participating Carrier may later specify by written notice to Sabre.

PCA, Schedule 1 ¶ 2.10 (emphasis added).

> Unlike the clause at issue in [*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)], the Forum Provision is properly construed as a permissive consent-to-jurisdiction provision, and not a mandatory and exclusive forum selection clause. We reach this conclusion solely because of the nonmandatory words the parties chose to express their agreement, and not, as the dissent apprehends, because the permissive clause contemplates more than one forum. As we discuss infra, a plaintiff's choice of forum is always entitled to considerable deference, but *we reject the Intervenors' contention that, in addition, their invocation of the Forum Provision is entitled to the extra protection that* Bremen *accords to mandatory forum selection clauses. Rather ... normal forum non conveniens analysis is applicable here.*

*Id.* at 979-80 (emphasis added) (*citing Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.*, 760 F.2d 390, 394 (2d Cir. 1985); *Banco Metropolitano, S.A. v. Desarrollo de Autopistas y Carreteras de Guatemala, S.A.*, 616 F. Supp. 301, 304-05 (S.D.N.Y. 1985)).[8] One district court has extended this reasoning to conclude that permissive forum selection clauses are entitled to no weight. *Magellan Real Estate Inv. Trust v. Losch*, 109 F. Supp. 2d 1144, 1149 (D. Ariz. 2000).

Canada clearly has a greater localized interest in this controversy. Air Canada consented to Texas jurisdiction but did not agree that Texas would be the most appropriate and convenient forum

---

[8] *Accord State Street Bank and Trust Co. v. Inversiones Errazuriz, Limitada*, No. 01 Civ. 3201(RLC), 2002 U.S. Dist. Lexis 1731, *18-19 (S.D.N.Y.) (noting that if a forum selection clause is permissive "then the court must engage in the more forgiving, traditional weighing of the public and private factors set forth in *Gilbert* and its progeny"); *FII Leveraged U.S. Gov't Bond Fund v. TCW Funds Mgmt.*, Nos. 97-56414, 97-56468, 1998 U.S. App. Lexis 17586, *5 (9th Cir.) (unpublished opinion) (finding that non-exclusive forum selection clause should not be given the "overwhelming importance" given exclusive clauses); *McNeil v. Stanley Works*, No. 00-16557, 2002 WL 535790, *1 (9th Cir. 2002) (unpublished opinion); *Lebofsky v. Helen's Handibags Franchise Corp.*, No. 90-7523, 1991 U.S. Dist. Lexis 6112, *3-5 (E.D. Pa.) (treating Virginia forum-selection clause as just one factor in *Gilbert* analysis and denying motion to dismiss for forum non conveniens). *See also Orix Credit Alliance, Inc. v. Mid-South Materials Corp.*, 816 F. Supp. 230, 233 (S.D.N.Y. 1993) (applying this principle to dismissal analysis under § 1404(a)); *National Union Fire Ins. Co. v. Frasch*, 751 F. Supp. 1075, 1079 (S.D.N.Y. 1990) (same).

for all disputes relating to the Agreement.  Thus, the localized controversy factor counsels in favor of dismissal.

### 3.    Governing law

The Agreement is governed by both Texas contract law, under a choice-of-law provision, as well as Canadian administrative regulations.  *See* PCA, Schedule 1 ¶ 2.10, ¶ 1.2.  Whichever court ultimately adjudicates this case will be obligated to look abroad and interpret foreign law.  Here, at issue are novel questions of Canadian regulatory law and well-settled Texas contract law.  The Canadian CRS regulations have not been interpreted before.  *See* Lefebvre Affidavit ¶ 11.  On the other hand, it would be relatively straightforward for the Canadian court to interpret Texas contract law.  *See id.* ¶ 5; *Montana,* 1 S.C.R. 32 (Exhibit G).  Given the novelty of the Canadian legal issues raised by this dispute, it is particularly important to allow a Canadian court to decide this case.  *See Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829, 840 (S.D. Tex. 1993) (considering the impact of a case's decision on a foreign country's commerce and the guidance provided to that country's citizens in conducting their commercial affairs).  While an erroneous application of settled Texas contract law may impact these parties, a mistaken application of Canadian regulations could have far-reaching consequences for all airlines and GDS operators providing services in Canada.  Consequently, if this Court is to avoid getting tangled with "law foreign to itself," *Piper Aircraft*, 454 U.S. at 251 (*quoting Gilbert*, 330 U.S. at 509), it should dismiss this case and defer to the authority more adept at interpreting Canadian regulations.

*Oil Basins Limited v. Broken Hill Proprietary Company Limited*, 613 F. Supp. 483 (S.D.N.Y. 1985), provides insightful guidance on handling this situation.  In *Oil Basins*, the United States District Court for the Southern District of New York confronted an agreement with a choice of law

clause that incorporated both New York contract law and Australian law governing hydrocarbon royalties. *Id.* at 490. In its forum non conveniens analysis, the court found different issues were implicated by the two sources of law:

> The first issue would seem to be a simple question of contract interpretation, governed by New York law, but primarily presenting questions of fact.... The second question necessarily involves the interpretation of Australian law, at least in its application. That is, the arbitrators will have to determine whether Australian law requires calculation of State royalties before excluding taxes, and if so, whether the specific royalties at issue were correctly calculated. Accordingly, the Court finds that Australian law will necessarily play a major part in the resolution of the dispute.

*Id.* at 490-91. Here, Texas law provides the basic contract law but Canadian regulations govern the more discreet issues at the core of the disagreement. The Texas law issues "will only require the implementation of general principles of contract interpretation," *id.* at 491, whereas the Canadian regulatory law and even the correct analytical approach for interpreting it will present far more complex issues. Therefore, this Court should adopt the *Oil Basins* approach and dismiss this action.

### 4.    Avoiding Unnecessary Problems in Conflicts of Laws or Application of Foreign Law

As described above, the Agreement incorporates both Texas and Canadian law. Because the governing law is clearly spelled out in the contract, this Court will not have to engage in any conflicts of laws analysis. If anything, since either tribunal will be forced to apply foreign law, this Court would confront more "unnecessary problems" interpreting Canadian regulatory law than a Canadian court would applying Texas contract law. *See id.* Therefore, this factor also points toward dismissing the case.[9]

---

[9] The final public interest factor—unfairness of burdening citizens in an unrelated forum with jury duty—is irrelevant because Canada (like almost every other jurisdiction in the world) does not have jury trials for civil disputes. *See Piper Aircraft*, 454 U.S. at 252 n. 18 (highlighting some of the differences

In sum, when the public interest factors are appropriately weighed, they lead to one conclusion: this controversy would more appropriately be resolved in the Canadian courts.

## II.   IN THE ALTERNATIVE, THIS COURT SHOULD STAY THIS ACTION PENDING RESOLUTION OF THE CANADIAN ACTION.

If this court concludes that Air Canada has not satisfied its burden to warrant dismissal for forum non conveniens, this court should take the "more measured step of staying the proceedings" pending resolution of the Art. 453 Motion. *Finova Capital Corp. v. Ryan Helicopters U.S.A, Inc.*, 180 F.3d 896 (7th Cir. 1999). Because the Canadian action is proceeding under an expedited procedural mechanism, a stay of this case pending that decision is appropriate.

### A.    International Abstention Warrants a Stay Here.

The international abstention doctrine allows a court to stay or dismiss an action where parallel proceedings are pending in the court of a foreign nation. *See Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 251 (D. Mass. 1999) (citations omitted); SCHWARZER, ET. AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL, ¶ 2:1326.4 (2002). International abstention is rooted in concerns of international comity, judicial efficiency and fairness to litigants following from the Supreme Court's decision in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Although the federal courts are generally expected to exercise the jurisdiction given to them, this obligation differs "if the case does not involve the application of legal rights or principles unique to, or specially protected by, federal law." *Finova*, 180 F.3d at 900. When a federal court exercises diversity jurisdiction—as here—the *federal* interests in retaining jurisdiction are substantially lower. *Id.* (describing such federal interest as "far from overwhelming"); *see also Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1223-24 (11th Cir. 1999) (finding that a federal

---

between U.S. states and foreign legal systems and noting that jury trials are not available in many countries).

court's duty to exercise the jurisdiction that is conferred upon it by Congress does not apply in the international abstention context).

Although the Fifth Circuit has not expressly adopted the doctrine of international abstention, the doctrine has been adopted by three other federal circuits.[10] *Id.; Boushel v. Toro Co.*, 985 F.2d 406, 409 (8th Cir. 1993); *Posner*, 178 F.3d at 1222. Although there is some analytical inconsistency among the federal courts regarding the legal test for applying international abstention,[11] a fairly typical international abstention framework considers the following factors:

- the similarities of the parties and issues involved in the foreign litigation;

- the promotion of judicial efficiency;

- adequacy of relief available in the alternative forum;

- issues of fairness to and convenience of the parties, counsel and witnesses;

- the possibility of prejudice to any of the parties; and

- the temporal sequence of filing of the actions.

---

[10] The Fifth Circuit has not specifically addressed the doctrine of international abstention, but it has sanctioned the more dramatic remedy of dismissal on the basis of international comity. *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 544 (5th Cir. 1997) (affirming lower court's dismissal for forum non conveniens and comity).

[11] The Eleventh Circuit has noted the development of two separate approaches to international abstention:

> One approach has taken the criteria enunciated in *Colorado River* and applied them to the international context. These cases have at times injected the special concerns of "international comity" into the abstention analysis. Another line of international abstention cases, developed in the Southern District of New York, applies a similar set of principles, with a clearer emphasis on the concerns of international comity implicated by the exercise of jurisdiction.

*Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994).

*EFCO Corp. v. Aluma Systems, USA, Inc.*, 983 F. Supp. 816, 824 (S.D. Iowa 1997); *see also Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994). Regardless of approach, the conclusion is the same: this Court should stay this action pending resolution of the Québec proceeding.

### B.      All Roads Lead to Canada

Given the overlap between abstention considerations and the elements of the forum non conveniens dismissal, extensive analysis is not necessary here. The two actions clearly involve the same parties and issues. Allowing only one to proceed would certainly be more judicially efficient. *See id.* ("Maintaining two concurrent and simultaneous proceedings would consume a great amount of judicial, administrative, and party resources for only speculative gain."). Because the Art. 453 Motion will probably proceed more rapidly in the Superior Court of Québec, it makes more sense to conserve this Court's judicial resources. The disproportionate share of evidence is in Canada; therefore, party, judicial, and witness convenience support a stay. If this action is not stayed, both parties risk prejudice; however, that consideration is outweighed by the risk of inconsistent judgements. *See id.* The temporal sequence of filing here militates strongly against Sabre, in light of its secretive approach to filing this Texas lawsuit.

Finally, if the principle of international comity is at the heart of international abstention, then deference to the Canadian courts is undoubtedly warranted here. *See Societe Nat'l Indus. Aerospatiale v. U.S. Dist. Ct. for the So. Dist. of Iowa*, 482 U.S. 522, 544 n. 27 (1987) ("Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."). Any nation's regulatory law governing its transportation industry has far-reaching economic, commercial, and territorial effects. Thus,

504893v1/229031                                    -22-

comity further counsels against risking the possibility that this Court inadvertently encroach upon the Canadian court's prescriptive power to interpret the CRS Regulations. As this Court stated in *Fleeger v. Clarkson Co., Ltd.*, 86 F.R.D. 388 (N.D. Tex. 1980), "[I]f this court cannot extend comity to Canada, the comity principle has little vitality in our jurisprudence." *Id.* at 392-93; *see also Brinco Min. Ltd. v. Federal Ins. Co.*, 552 F. Supp. 1233, 1240 (D.D.C. 1982) (*quoting Fleeger*); *EFCO Corp.*, 983 F. Supp. at 824 (same). As a result, this Court should—at a minimum—stay this case pending resolution of the Québec proceedings.

## CONCLUSION

This case presents a classic example of a dispute in which this Court has jurisdiction and venue, but the facts weigh strongly in favor of deferring to another court better suited to adjudicating the parties' dispute.

Wherefore Air Canada respectfully requests this court dismiss these proceedings for forum non conveniens. In the alternative, Air Canada requests this Court to stay these proceedings pending resolution of the Canadian action.

Respectfully submitted,

*Stephen J. Susman /elr*

Stephen D. Susman
State Bar No. 19521000
Harry P. Susman
State Bar No. 24008875
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666

ATTORNEYS FOR DEFENDANT
AIR CANADA, INC.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been served on

the following counsel of record, this ___16th___ day of October, 2002, as indicated below:

John R. Crews
Jon G. Shepherd
Gibson, Dunn & Crutcher LLP
2100 McKinney Ave., Suite 1100
Dallas, TX 75201
(214) 698-3400 FAX

_Harry P. Susman /elv_

Harry P. Susman

504893v1/229031                                    -24-