

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SABRE INC.,

        Plaintiff,

v.

AIR CANADA INC.,

        Defendant.

CIVIL ACTION NO. 3:02CV2016-L

---

### PLAINTIFF SABRE INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS, OR, IN THE ALTERNATIVE, TO STAY ON GROUNDS OF INTERNATIONAL ABSTENTION

---

John R. Crews
State Bar No. 00785529
Jon G. Shepherd
State Bar No. 00788402
Darren L. McCarty
State Bar No. 24007631
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile:  (214) 698-3400

ATTORNEYS FOR PLAINTIFF
SABRE INC.

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................................................. i

Table of Authorities ........................................................................................................ ii, iii

I.    Introduction ............................................................................................................ 1

II.   Facts    ..................................................................................................................... 4

III.  Argument ............................................................................................................... 7

      A.    Texas Is The Proper Forum For This Dispute ....................................... 7

            1.    Private Interests Favor Texas .................................................. 8

            2.    Public Interests Also Favor Texas .......................................... 12

      B.    Abstention Also Is Inappropriate Here ................................................. 14

IV. Conclusion .............................................................................................................. 17

CERTIFICATE OF SERVICE .......................................................................................... 18

**TABLE OF AUTHORITIES**

| Cases | Page |
|---|---|

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)................. 13, 15

*Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90 (5th Cir. 1992) ....... 7, 11

*DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990) ......................................................... 12

*Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896 (7th Cir. 1999).... 13, 14, 15

*Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285 (5th Cir. 1989) .................................... 11

*Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248 (D. Mass. 1999) ................................ 14

*Granite State Ins. v. Tandy Corp.*, 986 F.2d 94  (5th Cir. 1992) ................................................... 11

*In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987) ................................ 7

*Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258 (5th Cir. 2001) .................................................. 8

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984).............. 14

*Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62 (2d Cir. 1981).................................................. 13

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957) ........................................................................ 10

*McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403 (5th Cir. 2001).......................................... 8, 12

*Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982)............................ 10

*Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829 (S.D. Tex. 1993) ................................. 10

*Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193 (9th Cir. 1991)............ 13, 14

*Pan Am World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989) ........................................................ 7

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ................................................................. 8

*Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*,
906 F.2d 45 (1st Cir. 1990)............................................................................................................ 10

*Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159 (5th Cir. 1987) ............................................. 12

*Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512 (11th Cir. 1994) .................................... 14

**Statutes**

Canada Evidence Act, R.S.C., ch. C-5, § 46 (1985) ....................................................................... 10

Special Procedure Act, R.S.Q., ch. P-27, § 9 ................................................................................ 10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SABRE INC.,

          Plaintiff,

v.

AIR CANADA INC.,

          Defendant.

CIVIL ACTION NO. 3:02CV2016-L

## PLAINTIFF SABRE INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS, OR, IN THE ALTERNATIVE, TO STAY ON GROUNDS OF INTERNATIONAL ABSTENTION

## I.
## Introduction

Through its Motion to Dismiss or Stay, Defendant Air Canada asks this Court to ignore Air Canada's agreement that Texas law applies to its contract with Sabre Inc. ("Sabre") and its consent to jurisdiction in Texas, and to abdicate this Court's responsibility to exercise jurisdiction over this matter in favor of a subsequently filed declaratory judgment action Air Canada has brought in Canada. That Canadian action seeks a declaration as to the meaning of Canadian Computer Reservation System ("CRS") Regulations, which are irrelevant to the dispute between the parties. Air Canada knows well that the only issue to be decided in this litigation is whether the Participating Carrier Agreement (the "PCA") entered into between Air Canada and Sabre requires Air Canada to allow and facilitate the listing of its "Tango"-branded flights in the Sabre

Global Distribution System ("GDS"),[1] which Air Canada has admittedly refused to do.  It is a straightforward question of contract construction that can and should be answered by this Court, as Air Canada's own admissions before this Court demonstrate:

1.  Texas law applies to this contract dispute via a choice-of-law provision contained in the PCA (Defendant's Motion To Dismiss For Forums Non Conveniens, Or, In The Alternative, To Stay On Grounds Of Intentional Abstention And Supporting Brief ("Air Canada Motion to Dismiss") at 4);

2.  a nonexclusive forum selection clause within the PCA names Texas courts as an acceptable forum (Air Canada Motion to Dismiss at 16);

3.  this Court will ultimately  resolve the contractual dispute between Air Canada and Sabre in any event (Air Canada Motion to Dismiss at 3);

4.  Sabre is headquartered in Texas (Air Canada's Original Answer);

5.  Sabre filed this lawsuit first (Air Canada Motion to Dismiss at 6-7); and

6.  as a domestic (and real) plaintiff, Sabre presumptively is entitled to its choice of forum (Air Canada Motion to Dismiss at 8).

These factors, plus others, weigh strongly in favor of maintaining this case in Texas, whether evaluated under *forum non conveniens* or "international abstention."  In addition, the PCA is a standard Sabre agreement, expressly governed by Texas law, which Sabre has entered into in similar form with 393 other airlines throughout the world.  (Declaration In Support Of Plaintiff Sabre Inc.'s Opposition To Defendant's Motion To Dismiss For Forum Non Conveniens,

---

[1]  The terms "GDS" and "CRS" are interchangeable.

**PLAINTIFF SABRE INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS FOR FORUM NON CONVENIENS, OR, IN THE**
**ALTERNATIVE, TO STAY ON GROUNDS OF INTERNATIONAL ABSTENTION**     **Page 2**
50162843.3

Or, In The Alternative, To Stay On Grounds Of International Abstention ("Houck Decl.") ¶ 4, app. at 15.) The "Total Access" addendum to the Sabre-Air Canada PCA is in effect with 222 other airlines. (Houck Decl. ¶ 4, app. at 15.) Texas courts should construe the PCA's terms to promote uniformity and predictability. Nothing indicates that this Court should defer to Canada for the resolution of this matter.

Instead, Air Canada essentially bases its entire argument on two irrelevancies: (1) the location of various persons and facilities that have absolutely no bearing on resolving this matter (such as airplanes and travel agents); and (2) Canadian CRS regulations, which are not at issue in either this case or the Canadian declaratory judgment action. Sabre has not asserted any claim in either court against Air Canada based upon Canadian CRS regulations and Air Canada has not raised any defense based upon Canadian CRS regulations. The only dispute here is the proper interpretation of the unambiguous PCA and the amount of damages caused by Air Canada's breach. It is difficult to foresee any substantial volume of documentary evidence, much less live witnesses, being brought before this Court.[2] This is a legal question—a Texas Plaintiff's request to enforce a contract in accordance with Texas law—with no disputes about material facts. It should be resolved in Texas where it was first filed.

---

[2] Even if this Court found the PCA to be ambiguous, there are only two witnesses from Sabre's side who would have knowledge concerning negotiation of the PCA, Shelley Sutton and Carol Coker. (Houck Decl. ¶ 5, app. at 15-16.) Presumably, Air Canada would have a similarly small witness list on this point. Further, any damages evidence from Air Canada would require only Tango booking records and an Air Canada witness to authenticate them.

## II.
## Facts

On September 17, 2002, after months of discussions with Air Canada, Sabre filed its

Complaint in this Court seeking to remedy Air Canada's failure to provide information to Sabre

about its Tango[3] flights, a clear breach of the PCA.  (Plaintiff's Original Complaint; Plaintiff

Sabre Inc.'s Motion for Partial Summary Judgment.)  Sabre served the lawsuit on September 26,

2002, the same day Air Canada served a "Motion for Declaratory Judgment" it had filed on

September 25, 2002 in Montreal, Quebec.  (Air Canada Motion to Dismiss at 7.)

Sabre seeks only to enforce the PCA, a question squarely presented by Sabre's Motion for

Partial Summary Judgment filed in this Court on November 5, 2002:

> Air Canada breached the Participating Carrier Agreement by refusing to allow
> Sabre to obtain information concerning, and allow the subscribers to Sabre's
> Global Distribution System to book reservations on, flights operated by Air
> Canada under its "Tango" nomenclature.

(Plaintiff Sabre Inc.'s Motion for Partial Summary Judgment at 2.)  Air Canada's Motion for

Declaratory Judgment filed in Canada similarly notes:

> On or about June 26, 2002, Sabre verbally advised Air Canada that it was in
> breach of the PCA As Amended by not offering its seat inventory on Tango
> flights for sale through its GDS and thereby failing to allow Sabre subscribers to
> book reservations on Tango flights.

(Air Canada's Motion for Declaratory Judgment, attached as Exhibit E to Air Canada Motion to

Dismiss, ¶ 17.)  Both parties are well aware of the dispute between them.

---

[3]  Tango is a brand name used by Air Canada to refer to a type of low-cost products on certain
flight times using Air Canada aircraft and crew.

A major distinction in the actions, as Air Canada acknowledges, is that ultimate relief will not be afforded Sabre in the Canadian action because Air Canada seeks only a declaration of rights.  (Air Canada Motion to Dismiss at 3 ("Once a Canadian court has determined the scope of the Canadian regulations, *then this Court will be better able to resolve the contractual dispute between Air Canada and Sabre.") (emphasis added).)  In fact, Sabre cannot receive a money judgment through the Canadian action even through a counter-claim, meaning full relief cannot be afforded Sabre through the Canadian action.  (Declaration of Julie Chenette ("Chenette Decl.") ¶ ¶ 6-9, app. 54.)  Air Canada has requested the Canadian court to determine whether Canadian CRS regulations require Air Canada to provide its Tango "inventory" *to any GDS*, not just Sabre—a question that has no bearing on the contractual obligation Sabre seeks to enforce here.  (Air Canada's Motion for Declaratory Judgement, attached as Exhibit E to Air Canada Motion to Dismiss, ¶ 21.)  What Air Canada must do per Canadian regulation is a dispute it must resolve with the Canadian administrative authorities and the Canadian government, not Sabre.[4]

---

[4] In essence, assuming Air Canada has a contractual obligation to provide Sabre with Tango flight information, Air Canada wants the Canadian court to determine whether, per Canadian regulations, it would be required to also list those flights in other GDSs as well.  (Air Canada's Motion for Declaratory Judgment, attached as Exhibit E to Air Canada Motion to Dismiss, ¶ 15 ("Since Air Canada does not offer its Tango seat inventory to any GDS operating in Canada, Air Canada has not breached its obligation under section 8(1) of the [Canadian] CRS Regulations to participate in a comparable manner in the GDSs that are operated in Canada.").)  The PCA requires what it requires and Air Canada must bear the regulatory consequences.  Air Canada has not and cannot argue that the PCA is somehow invalidated by Canadian CRS Regulations.  They simply have no impact on whether the PCA requires Air Canada to list Tango flights in Sabre.  If that in turn means that Air Canada must make those same flights available to other GDSs under Canadian law, then Air Canada must take that up with the Canadian government.

In a direct attempt to confuse the issues, Air Canada states that due to incorporation into the PCA, the PCA itself is "governed by both Texas contract law . . . as well as Canadian administrative regulations." The PCA unquestionably is governed by the laws of the State of Texas. (PCA, Schedule 1, Art. II.J, app. at 35.) As to Canadian CRS regulations, however, the "incorporating" language to which Air Canada refers states only: "[Sabre Inc.] shall maintain and operate Sabre in accordance with applicable GDS Rules." (PCA, Art. I, ¶ 1.2, app. at 18.) The PCA does not address any obligations of Air Canada under applicable GDS Rules. Sabre's claim here does not depend upon Canadian CRS regulations, and those regulations do not form the basis of any claim in Sabre's Complaint. Likewise, Air Canada's Answer filed with this Court fails to raise the Canadian CRS regulations as a defense to Sabre's straightforward breach-of-contract claim.[5]

With Sabre's filing of its Motion for Partial Summary Judgment, the contractual issues before this Court are well on their way to resolution. This Court already is considering both the propriety of maintaining this action in Texas and the merits. Air Canada does not hide the fact that it is racing to a resolution in its home forum, but the Canadian proceeding is no more advanced than this action and, despite Air Canada's optimistic appraisal, is not nearing resolution.

Virtually every material aspect of this case is tied to Texas. Sabre, the Plaintiff, is a Texas-based corporation. (Plaintiff's Original Complaint ¶ 1; Air Canada's Original Answer

_____

[5] Even if the Canadian CRS regulations were an issue in this case, which they are not, they likely would have no bearing on Air Canada's obligation to provide flight information with respect to Sabre subscribers located outside of Canada, or with respect to Tango flights between the U.S. and Canada.

**PLAINTIFF SABRE INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS FOR FORUM NON CONVENIENS, OR, IN THE**
**ALTERNATIVE, TO STAY ON GROUNDS OF INTERNATIONAL ABSTENTION**          **Page 6**
50162843.3

¶¶ 1-3.)  The parties expressly agreed for the PCA to be governed by Texas law.  (PCA,

Schedule 1 ¶ 2.10, II.J, app. at 35.)  The parties expressly consented to the jurisdiction of Texas

courts.  (PCA, Schedule 1 ¶ 2.10, II.J, app. at 35.)  This breach-of-contract action was filed in

Texas before Air Canada attempted to preempt Sabre, the true plaintiff, by seeking declaratory

relief in Canada.  (Air Canada Motion to Dismiss at 6-7.)

Other than the PCA, documents and witnesses should play little role in this matter.  To

the extent they do, Sabre's documents and witnesses are in Texas.  (Houck Decl. ¶¶ 5-6, app. at

15-16.)  Moreover, Air Canada has regularly scheduled flights to DFW Airport, lowering any

burden to litigating the issues in Texas.  (Air Canada Timetable Excerpt at app. at 52.)

This dispute is legally and practically intertwined with Texas.  There is no basis for

dismissing it in favor of a Canadian forum.

## III.
## Argument

### A.     Texas Is The Proper Forum For This Dispute

"District courts ordinarily should respect a plaintiff's forum choice."  *Command-Aire*

*Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 95 (5th Cir. 1992).  A defendant bears

the burden of establishing that a matter should be dismissed for *forum non conveniens* and "[t]his

burden of persuasion runs to all the elements of the forum non conveniens analysis."  *In re Air*

*Crash Disaster Near New Orleans*, 821 F.2d 1147, 1164 (5th Cir. 1987) (en banc), *vacated on*

*other grounds sub nom.*, *Pan Am World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989).  A

defendant must therefore show that there is an adequate alternate forum and that "private and

public interests *weigh heavily* on the side of trial in the foreign forum."  *Id.* (emphasis added).

Neutrality is not enough.  As the Fifth Circuit recently reiterated, only "'rare circumstances'"

justify a district court relinquishing its "'jurisdiction in favor of another forum.'" *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996)).  This case is not that *rare* circumstance.

### 1.    Private Interests Favor Texas

Private interests consider the convenience to the litigants, including access to evidence, the cost of obtaining willing witnesses, the ability to compel unwilling witnesses, the ability to view any premises, and other practical matters.  *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001).  This case is not a fact-intensive matter and thus will neither be document nor witness intensive, nor are there any premises to view.  Air Canada will not suffer any substantial burden litigating in Texas and certainly will not be inconvenienced more than Sabre if this Court were to reject Sabre's choice of forum.

Air Canada's argument that Texas is so inconvenient that this Court should reject its constitutionally conferred jurisdiction rings hollow.  Contrary to Air Canada's suggestions, it is utterly irrelevant to this dispute where Air Canada's reservation personnel, Tango's reservation personnel,[6] Air Canada's internal reservation system, Tango's customers, or Canadian reservation agents are located.  To the extent any documents or witnesses are deemed important, they are distributed between *this judicial district in Texas* where Sabre's headquarters are located and *throughout Canada, not simply within Quebec* where Air Canada filed its action, as Air Canada admits.  (Air Canada Motion to Dismiss at 12.)  Witnesses in this judicial district include:

---

[6]  Although Air Canada lists Tango and Air Canada reservation agents separately, they apparently are one and the same.  (Air Canada's Motion for Declaratory Judgement, attached as Exhibit E to Air Canada Motion to Dismiss, ¶ 14.)

Shelley Sutton, who served as Sabre's account manager for Air Canada when the parties originally entered the PCA; Scott Dennett, who has overall responsibility for the Sabre-Air Canada relationship as Sabre's Account Executive; Matthew Quinn and Richard Beaulieu, who are responsible for Sabre's billing of Air Canada; David Houck, who maintains the Sabre-Air Canada PCA documentation; Russ Smith, who handles Sabre's booking updates and reports for Air Canada; Cheri Morris, who handles service matters for Air Canada on behalf of Sabre as a customer-service liaison; Michael Czyz, who is also a customer-service liaison for Sabre and handles a majority of the technical addendums concerning the Sabre-Air Canada PCA; Mike Kerrigan, who oversees Sabre's sales relationship with Air Canada and has participated in discussions concerning Tango; Toni Beeny, who oversees Sabre's relationships with all carriers and has participated in discussions concerning Tango; and Carol Coker, who worked for Sabre and participated in the formation of the initial relationship between Air Canada and Sabre via the PCA. (Houck Decl. ¶ 5, app. at 15.) Documents including the PCA with its connected addendums and amendments, PCA-related correspondence, and billing and invoicing for Air Canada, also are located here. (Houck Decl. ¶ 6, app. at 16.) If papers and witnesses from Canada are needed, Air Canada has regularly scheduled service to DFW Airport and should incur no significant expense transporting documents or people to Texas.[7]

---

[7] Decades ago, the United States Supreme Court recognized that out-of-state entities regularly doing business in a state would suffer little inconvenience by having to litigate there:

> Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and

[Footnote continued on next page]

Further, Air Canada's list of potential Canadian witnesses to the Sabre-Air Canada relationship identifies only Air Canada employees plus one retired Air Canada employee. (Air Canada Motion to Dismiss at 12.) It is apparent that Air Canada does not anticipate compelling unwilling witnesses participate in these proceedings. Nevertheless, United States courts are certainly capable of compelling unwilling Canadian witnesses to participate as expressly provided by Canadian law. Canada Evidence Act, R.S.C., ch. C-5, § 46 (1985) (Can.) (app. at 10, 12); Special Procedure Act, R.S.Q., ch. P-27, § 9 (app. at 4).

Equally, if not more important, is what the parties freely negotiated and contemplated prior to this dispute arising. The PCA states that "Each party hereby consents to the non-exclusive jurisdiction of the courts of the State of Texas in any dispute arising out of this Agreement." (PCA, Schedule 1, II.J, app. at 35.) Despite Air Canada's protestations to the contrary, agreeing to the nonexclusive jurisdiction of Texas courts "provides a clear indication of" Air Canada's expectations about where disputes should be resolved. *Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829, 833 (S.D. Tex. 1993) (noting that nonexclusive forum selection clauses should be given weight in a *forum non conveniens* analysis); *see also Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 51 (1st Cir. 1990) (same).

---

[Footnote continued from previous page]
     communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222-23 (1957). "The historical developments noted in *McGee*, of course, have only accelerated in the generation since that case was decided." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1011 (5th Cir. 1982).

Texas law also was expressly embraced by the parties in the PCA:

> This Agreement and any disputes arising hereunder shall be governed by the laws of the United States and the State of Texas without regard to its conflict of laws rules.

(PCA, Schedule 1, Art. II.J, app. at 35.)  Although the application of "home forum" law is often considered to be a public rather than private interest, two considerations impact that here.  First, it is another acknowledgment by Air Canada that the contractual relationship is bound to Texas, indicating that the parties embraced dispute resolution in Texas.  *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 291 (5th Cir. 1989) ("[The contract] contained choice-of-law and choice-of-forum provisions tying the dispute to that country.")  Second, this case involves the interpretation of contractual provisions that are present in almost 400 contracts worldwide. (Houck Decl. ¶ 4, app. at 15.)  It is both proper and fair for Sabre to bring this lawsuit in a forum both agreed to by the parties and in which it resides.  Sabre has a significant interest in obtaining a consistent interpretation by the courts whose law expressly governs.  (Houck Decl. ¶ 4, app. at 15.)  If anything, Air Canada's move to initiate a declaratory judgment action in Canada is an attempt to forum-shop and to deprive Sabre, the real plaintiff, of its rightful choice of forum. *Command-Aire*, 963 F.2d at 95; *cf. Granite State Ins. v. Tandy Corp.*, 986 F.2d 94, 96 (5th Cir. 1992) (noting that in evaluating abstention based upon a pending declaratory judgment action, federal courts have broad discretion because of forum-shopping and other improper motivations).

Nothing indicates that Air Canada would suffer any inconvenience before this Court worthy of trumping Sabre's rightful choice.  No doubt Air Canada would prefer that this Court ratify its forum shopping, but Air Canada has not met its heavy burden to show that this is the rare circumstance where convenience so favors Canada that a federal court should reject its legitimate jurisdiction and deprive Sabre of its chosen forum.

At the outset of their relationship, the parties freely negotiated and acknowledged via the PCA that Texas was a legitimate forum for litigating contract disputes like the one now before this Court. That should not be blithely set aside at Air Canada's unilateral whim.

## 2. Public Interests Also Favor Texas

Relevant public considerations include the application of forum law, avoiding unnecessary conflict of law problems, court congestion, the local nature of the controversy, and whether the forum is so unrelated that it would be unfair to burden local citizens with jury duty. *McLennan*, 245 F.3d at 424. None of these factors favor dismissal either.

The parties already have agreed that Texas law should apply. Under Texas law, that agreement is binding (which Air Canada does not contest). *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990) (holding that private choice-of-law provisions are generally enforced). If tried here, there will be no conflict of law problem and this Court will apply familiar Texas law.

Air Canada's attempt to introduce Canadian regulations is nothing more than a red herring. Sabre has not asserted a claim in any court based on those regulations and Air Canada has not raised any defense based upon them here.[8] Thus, it is extremely unlikely that those regulations would play any role in the decisions to be made by the Court in this breach-of-contract case; but even if this Court had to address them in some unforeseeable fashion, it should not shy away. *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1164 (5th Cir. 1987) ("'We must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore

---

[8] Furthermore, Canadian regulations apply only in Canada, while the scope of the PCA is essentially worldwide.

**PLAINTIFF SABRE INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS, OR, IN THE ALTERNATIVE, TO STAY ON GROUNDS OF INTERNATIONAL ABSTENTION**
50162843.3

**Page 12**

federal courts must often perform."') (quoting *Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 63 (2d Cir. 1981)).

There can be no argument that this case is unconnected to this community.  Sabre is headquartered here.  The PCA with Air Canada is mirrored by 393 other agreements Sabre entered into with other carriers around the world.  Its interpretation is a vital issue to Sabre's business.  (Houck Decl. ¶ 4, app. at 15.)  This Court and potential jurors have a local interest in this dispute.  Air Canada has suggested that it could attempt to force an inconclusive declaratory judgment action through the Canadian courts, but has introduced no evidence demonstrating that this Court is more "congested" than the Canadian forum.  Even if it is, that should have no impact on Sabre's contractually recognized right to bring this suit before this Court.

Like the private interest factors, the public interest considerations do not support dismissal in favor of Canada.  The facts simply do not justify moving this case to Canada.

**B.      Abstention Also Is Inappropriate Here**

Air Canada admits that neither the courts of the Fifth Circuit nor the United States Supreme Court have embraced international abstention.  Moreover, whether international abstention is appropriate under any circumstances is, to be generous, questionable.  Courts have a "'virtually unflagging obligation' to exercise the jurisdiction conferred . . . by Congress." *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  "[A]bsent exceptional circumstances, federal courts have an obligation to exercise their jurisdiction concurrently with other courts." *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1194-95 (9th Cir. 1991) (refusing to stay an action based upon parallel international proceedings).  "Courts have been hesitant to abrogate this jurisdictional duty in the

**PLAINTIFF SABRE INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS FOR FORUM NON CONVENIENS, OR, IN THE**
**ALTERNATIVE, TO STAY ON GROUNDS OF INTERNATIONAL ABSTENTION**          **Page 13**
50162843.3

international context. 'Parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.'" *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 251 (D. Mass. 1999) (quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926-27 (D.C. Cir. 1984)).

Even those jurisdictions that recognize abstention in the "interests of international comity" would not abstain here. *See Finova Capital*, 180 F.3d at 898 (explaining that international comity is the basis for the rare instance when international abstention is appropriate). There is nothing extraordinary about this "unexceptional commercial dispute" over the interpretation of contractual requirements in accordance with Texas law, notwithstanding Air Canada's unfounded attempt to introduce non-existent issues concerning Canadian CRS regulations. *See Neuchatel Swiss Gen. Ins. Co.*, 925 F.2d at 1195 (rejecting international abstention regarding a commercial dispute). Canada certainly has no overriding or compelling interest in this dispute such that a United States District Court should refuse to exercise its jurisdiction.

There are three *general* considerations that some courts have considered in the context of international abstention: (1) respect for the acts of sovereign nations; (2) fairness to litigants; and (3) the efficient use of judicial resources. *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994). Because there has been no resolution on the merits reached in Canada, no official action requiring any deference has taken place. The convenience of the private litigants favors maintaining the case in Texas as detailed above in the *forum non conveniens* analysis. Finally, this action was filed first and will fully resolve the parties' dispute. The Canadian action will not resolve it because Sabre cannot obtain ultimate relief in that

action—even by way of a counter-claim. (Chenette Decl. ¶¶ 6-9, app. at 54.) It appears that sooner or later this Court will have to take an active role in this matter. There is no need for two tribunals to proceed with this matter, but Air Canada can and should voluntarily stay its later-filed Canadian action so that the parties can fully resolve this matter before this Court, as clearly contemplated in the PCA.

In *Finova Capital*, 180 F.3d at 898-99, the Seventh Circuit identified several discrete considerations in the international abstention context that were distilled from the *Colorado River* analysis, all of which weigh against abstention here:

a.   Which court first assumed jurisdiction over the property and first received the action? Although there is no property over which to assert jurisdiction vis à vis an *in rem* action, the Texas Court first received the action and takes priority.

b.   Whether the federal forum is comparatively inconvenient. As previously detailed in the *forum non conveniens* analysis, a Texas forum is more convenient and appropriate.

c.   Whether the court can avoid piecemeal litigation. This factor clearly favors the Texas action as Air Canada's action would result only in a declaratory determination without providing for ultimate monetary relief should Sabre prevail.

d.   Whether domestic or foreign law provides the rule of decision. Texas law governs this contract dispute.

e.   Whether the foreign court would protect the federal plaintiff's rights. Although Air Canada has sought a declaratory judgment, it would not accord Sabre any actual relief, which would require Sabre to seek damages in a subsequent action

anyway.  Sabre would therefore suffer prejudice because of the unnecessary litigation.

f.      Whether either of the two proceedings are at a more advanced stage.  Neither case has proceeded beyond the initial stages, though Sabre now has filed for summary judgment concerning Air Canada's liability for breach of contract, which should be resolved quickly.

g.      Whether the federal action is vexatious.  There is certainly nothing vexatious about Sabre filing an action over a bona-fide contract dispute in a forum that the parties both contemplated when entering the PCA.

Whether looking at abstention through a focused or wide-angle view, the answer is the same—abstention would be patently inappropriate in these circumstances.

## IV.
## Conclusion

For the foregoing reasons, Sabre asks this Court to deny Defendant's Motion to Dismiss for Forum Non Conveniens, or, In the Alternative, To Stay on Grounds of International Abstention.

DATE:  November 5, 2002

Respectfully submitted,

By: _____
      John R. Crews
      State Bar No. 00785529
      Jon G. Shepherd
      State Bar No. 00788402
      Darren L. McCarty
      State Bar No. 24007631
      GIBSON, DUNN & CRUTCHER LLP
      2100 McKinney Avenue, Suite 1100
      Dallas, Texas 75201
      Telephone: (214) 698-3100
      Facsimile:  (214) 698-3400
      ATTORNEYS FOR PLAINTIFF SABRE INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was sent via certified mail, return receipt requested to Stephen D. Susman, counsel for Defendant, on the 5th day of November, 2002.

_____
Darren L. McCarty

**PLAINTIFF SABRE INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS, OR, IN THE ALTERNATIVE, TO STAY ON GROUNDS OF INTERNATIONAL ABSTENTION**
50162843.3

**Page 17**