IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SABRE INC., <br><br> Plaintiff, <br><br> v. <br><br> AIR CANADA INC., <br><br> Defendant. | CIVIL ACTION NO. 3:02CV2016-L |

**BRIEF IN SUPPORT OF SABRE INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Sabre Inc. ("Sabre") respectfully files this Brief in Support of its Motion for Summary Judgment (the "Motion"), and would show the Court as follows:

## I.   INTRODUCTION

Sabre owns and operates a state-of-the-art global distribution system ("GDS")[1] that, among other things, allows travel agents to make reservations and issue tickets for travel on certain foreign and domestic air carriers that "participate" in Sabre. A "participating" carrier is an airline that enters into a contract to distribute its services through the Sabre GDS. The participating carrier is then obligated to pay Sabre a fee for each booking made through the Sabre GDS. Further, the ability to make available desirable content on air carriers is a key selling point for Sabre when marketing the Sabre GDS to travel agents.

Defendant Air Canada is one such participating carrier, having entered into a Sabre Participating Carrier Distribution and Services Agreement ("the PCA") in 1990. The PCA

---

[1] A GDS also is sometimes referred to as a computer reservation system ("CRS").

specifically provides that it is governed by Texas law, and Air Canada expressly consented in the PCA to jurisdiction in Texas with respect to any dispute arising out of the PCA.

Sabre, a Delaware company headquartered in Texas, has brought this lawsuit based upon Air Canada's breach of the PCA. Specifically, Air Canada has breached the PCA by refusing to provide information to Sabre sufficient to allow the inclusion of all of Air Canada's flights in the Sabre GDS. Without such information, travel agencies cannot use the Sabre GDS to make reservations on and issue tickets for the Air Canada flights at issue. Consequently, Air Canada is both depriving Sabre of significant fees that it is otherwise entitled to earn under the express terms of the PCA and making the Sabre GDS less valuable to Sabre's subscribers, impeding Sabre's ability to market the system.

## II.   FACTS

The following facts are drawn almost exclusively from Air Canada's own judicial filings and the exhibits that Air Canada attached thereto. Thus, they are undisputed.

### A.   The PCA Requires Air Canada To Provide Sabre With Information On All Air Canada Flights.

Sabre, among other things, owns and operates a state-of-the-art GDS used for the electronic distribution of air transportation, hotel, car rental and other travel-related services. Sabre markets the Sabre GDS to tens of thousands of subscribers worldwide. These entities – typically, travel agencies – use the Sabre GDS to, among other things, review travel availability for, make reservations on, and issue tickets for travel on participating foreign and domestic air carriers which contract to participate in the Sabre GDS and to pay Sabre a fee for each booking made through the Sabre GDS. *See* Declaration in Support of Sabre Inc.'s Motion for Partial Summary Judgment ("Houck Decl.") ¶¶ 2-3; *see also* Air Canada Motion to Dismiss For Forum Non Conveniens ("AC Motion to Dismiss") at 3.

In short, the PCA imposes on Sabre and Air Canada corresponding, mutual obligations; Sabre must make *all* of Air Canada's flights available to travel agencies through the Sabre GDS and Air Canada must provide to Sabre information on *all* of its flights for distribution to all Sabre Subscribers.

**B.    Air Canada's Services Include Its Tango-Branded Flights.**

Air Canada operates passenger airlines services in Canada and throughout the world. AC Canadian Motion ¶ 1. On November 1, 2001, Air Canada began operating its so-called "Tango"-brand, which offers travelers a discounted fare for no-frills service. *Id.* ¶ 13; *see also id.* ¶ 16 ("Air Canada operate[s] the Tango brand"). Air Canada's reservation personnel operate Air Canada's reservation services for Tango flights using Air Canada's internal reservation system. *Id.* ¶ 14; *see also id.* at 3 (seeking a declaration concerning "Air Canada's decision not to offer reservation services for *its seat inventory* on Tango flights") (emphasis added). Thus, Air Canada operates at least two types of airline passenger service: its so-called "full" service and its "low cost" Tango-brand service. AC Motion to Dismiss at 4-5; AC Canadian Motion ¶ 13.

**C.    Sabre's Efforts To Obtain Information From Air Canada Relating To Tango**

Sabre has repeatedly requested that Air Canada provide the information required to allow Sabre Subscribers to book reservations and issue tickets for Air Canada's "Tango" flights. Houck Decl. ¶ 6 (app. at 3); *see also* AC Canadian Motion ¶¶ 15-18; AC Motion to Dismiss at 1 ("For many months, Air Canada and Sabre have disagreed over whether Sabre has the right to book Tango flights."). Air Canada has refused to provide that information, however. Houck Decl. ¶ 7 (app. at 3); *see also* AC Canadian Motion ¶ 14. Consequently, travel agencies subscribing to the Sabre GDS are unable to book reservations and issue tickets for Air Canada's "Tango" service. Houck Decl. ¶¶ 7-8 (app. at 3); *see also* AC Canadian Motion ¶ 14.

## III.   ARGUMENT AND AUTHORITIES

A.   **The Summary Judgment Standard**

A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Sabre may prevail on its motion for summary judgment by adducing evidence to support each element of its claim and demonstrating the lack of any genuine issue of material fact with regard thereto. *See Rushing v. Kansas City Southern Ry.*, 185 F.3d 496, 505 (5th Cir. 1999). In response, Air Canada may not rely on pleadings or mere conclusory statements, but instead must present specific facts showing there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). As set forth in more detail below, Air Canada cannot sustain its burden in light of the undisputed evidence.

B.   **Because The PCA Is Unambiguous, Sabre Is Entitled To Summary Judgment.**

The PCA is governed by Texas law. AC Motion to Dismiss at 4; PCA, Schedule 1, Art. II.J. (app. at 22). Under Texas law, the construction of an unambiguous contract presents a question of law that is properly determined by the Court. *Stinnett v. Colorado Interstate Gas Co.*, 227 F.3d 247, 254 (5th Cir. 2000); *Phillips v. Union Bankers Ins. Co.*, 812 S.W.2d 616, 617-18 (Tex. App.—Dallas 1991, no writ). "When the language [of the contract] is plain, it must be enforced as written." *Phillips*, 812 S.W.2d at 617-18. "[I]f a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *see also International Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002). Whether a

contract is unambiguous is a question of law for the Court to decide. *See Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex. 1987), *cited in Stinnet*, 227 F.3d at 254.

Texas law does not permit parole evidence to be presented unless the court finds, as a matter of law, that an agreement is ambiguous and needs extrinsic evidence as an aid to interpretation. *See R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). "[I]n the interpretation of contracts, the primary concern of courts is to ascertain and to give effect to the intentions of the party as expressed in the instrument." *Id.* at 518; *see also Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A court can allow extrinsic evidence of the parties' interpretation of an agreement only when it already has determined that the contract is not clear on its face. *See Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980). Moreover, "[a]n instrument is not ambiguous simply because the parties disagree over its interpretation." *Praeger v. Wilson*, 721 S.W.2d 597, 600 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.).

> 1. **The PCA Unambiguously Requires Air Canada To Supply Sabre With "Tango" Flight Information And To Allow Sabre Subscribers To Make Reservations On "Tango" Flights.**

It is undisputed that Air Canada's "Tango" flights are passenger airline services just like Air Canada's "regular" passenger airline services – the only difference is that Air Canada has decided to brand some of its seats as "Tango" seats. *See, e.g.*, AC Canadian Motion ¶ 13. In its own words, "Air Canada operate[s] the Tango brand." *Id.* ¶ 16. Air Canada's reservation personnel use Air Canada's internal reservation system to make reservations for Air Canada's "Tango" flights. *Id.* ¶ 14. The seats on Air Canada's "Tango" flights are part of Air Canada's "seat inventory." *Id.* at 3.; *id.* at 15 ("If Air Canada is coerced into providing ***its Tango inventory* . . . .**") (emphasis added). Simply put, Air Canada and Tango are one and the same.

> a. **Air Canada Has Breached The PCA By Refusing To Provide Sabre With Information Concerning All Air Canada Flights.**

In order to fulfill its obligations under (and derive the benefits of) the PCA, information relating to Air Canada's flights – such as fares, fare rules, availability, and so on – must be loaded into the Sabre GDS. If Sabre is unable to obtain fare information from industry suppliers, Air Canada is required to "promptly supply" the information so that it can be loaded into Sabre's GDS, thereby providing Sabre Subscribers with access to those fares and fare rules. PCA ¶ 2.16 (app. at 10). As it is undisputed that Sabre has requested information concerning Air Canada's "Tango" flights and Air Canada has refused to provide such information to Sabre, it likewise is undisputed that Air Canada has breached the PCA.

> b. **Air Canada Has Breached The PCA By Refusing To Provide Sabre With Access To All Air Canada Seat Inventory.**

Air Canada is also required to make available to Sabre "the schedule and availability display used by [Air Canada's] reservation personnel," including any such display that includes Tango services. *See* PCA Total Access Direct Connect Air Optional Services Addendum ¶ 5(e) (app. at 35). Air Canada further must make available to Sabre Subscribers certain "functions of [its] internal reservation system," including the ability to sell seats on Air Canada flights (whether or not Air Canada's "full" service or its Tango-branded service) and "last seat availability." *Id.* ¶ 5(d) and Schedule A thereto (app. at 35, 38).

Air Canada admits that its personnel use Air Canada's internal reservation system to make reservations for Air Canada's "Tango" flights. AC Canadian Motion ¶ 14. Air Canada also admits that it "does not offer the seat inventory on Tango flight for sale through [the Sabre] GDS." *Id.* Thus, it is undisputed that Air Canada has made available to Sabre and Sabre Subscribers neither "the schedule and availability display used by [Air Canada's] reservation

personnel" nor the "functions of [Air Canada's] internal reservation system." Accordingly, Air Canada has breached these provisions of the PCA as well.

2.      **The Canadian CRS Regulations Are Not Relevant To This Case.**

In its Motion to Dismiss, Air Canada focuses on the Canadian Computer Reservation System Regulations ("Canadian CRS Regulations"), and Sabre anticipates that Air Canada will again focus on these Regulations in response to this Motion. However, the Canadian CRS Regulations simply are not relevant to Sabre's claim that Air Canada has breached the PCA.

Sabre has asserted a simple, straightforward breach-of-contract claim that can be resolved as a matter of law solely by reviewing the unambiguous language of the PCA. The Canadian CRS Regulations play no role in that resolution. Indeed, Air Canada's own papers demonstrate that very point. Air Canada does not claim that the Canadian CRS Regulations void or preempt any provision of the PCA. Air Canada does not claim that any provision of the PCA conflicts with the Canadian CRS Regulations. Instead, Air Canada contends that *if* the PCA requires Air Canada to provide its "Tango" flight inventory to Sabre Subscribers, **then** the Canadian CRS Regulations would require Air Canada to provide the same inventory to other GDSs. *See* AC Motion to Dismiss at 5. That the Canadian CRS Regulations may require Air Canada to make its "Tango" inventory available to other GDSs following a ruling that the PCA requires Air Canada to make that inventory available to Sabre has no bearing on what the PCA does or does not require or what the PCA does or does not mean.[5] Indeed, Air Canada's request for a

---

[5] Notwithstanding any Air Canada argument to the contrary, *see* AC Motion to Dismiss at 11, Sabre makes no claim that the Canadian CRS Regulations require Air Canada to provide its "Tango"-branded inventory to Sabre. Moreover, even if Sabre did make such a claim, it would be heard before the Canadian Ministry of Transport, the governmental body responsible for enforcing the Regulations, and nothing related to that administrative

[Footnote continued on next page]

determination concerning what the Canadian CRS Regulations require is not even ripe unless and until there is a determination that the PCA requires Air Canada to provide its "Tango" flight inventory to Sabre Subscribers. Whether Air Canada provides, or is required to provide, its "Tango" flight inventory to any other GDS simply is not relevant to the claim pending before this Court.

In sum, Air Canada voluntarily entered into an agreement with Sabre that imposes certain obligations on Air Canada. Whether or not the Canadian CRS Regulations impose additional obligations on Air Canada with respect to parties other than Sabre as a result of the Air Canada-Sabre contract is not relevant to the interpretation of the Air Canada-Sabre contract and issues concerning the Canadian CRS Regulations need not be considered by this Court.

## VI.   CONCLUSION

For the foregoing reasons, Sabre respectfully requests that the Court grant its Motion for Partial Summary Judgment and enter judgment in Sabre's favor and against Air Canada as to Air Canada's liability for breach of contract as alleged in the Complaint.

---

[Footnote continued from previous page]
   proceeding would stop this Court from hearing and deciding the breach of contract issue raised here.

DATE:  November 5, 2002.

                                      Respectfully submitted,

                                      By: _____
                                      John R. Crews
                                      State Bar No. 00785529
                                      Jon G. Shepherd
                                      State Bar No. 00788402
                                      GIBSON, DUNN & CRUTCHER LLP
                                      2100 McKinney Avenue, Suite 1100
                                      Dallas, Texas 75201
                                      Telephone: (214) 698-3100
                                      Facsimile:  (214) 698-3400

                                      ATTORNEYS FOR PLAINTIFF SABRE INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was sent via certified mail, return receipt requested to Stephen D. Susman, counsel for Defendant, on the 5th day of November, 2002.

_____
Jon G. Shepherd